# EXHIBIT 1

ELIJAH E. CUMMINGS, MARYLAND
CHAIRMAN

ONE HUNDRED SIXTEENTH CONGRESS

JIM JORDAN, OHIO
RANKING MINORITY MEMBER

Congress of the United States

House of Representatives

COMMITTEE ON OVERSIGHT AND REFORM

2157 RAYBURN HOUSE OFFICE BUILDING

WASHINGTON, DC 20515–6143

MAJORITY (202) 225–5051
MINORITY (202) 225–5074

http://oversight.house.gov

**MEMORANDUM**

**June 7, 2019**

**To:** **Members of the Committee on Oversight and Reform**

**Fr:** **Majority Staff**

**Re:** **White House Interference with Oversight Committee Interview of Kris Kobach**

This past Monday, on June 3, 2019, Democratic and Republican Committee staff conducted a private, previously-undisclosed interview with Kris Kobach, the former Secretary of State of Kansas, regarding the Trump Administration's efforts to add a citizenship question to the 2020 Census.

The White House interfered directly and aggressively with the Committee's interview by instructing Mr. Kobach not to answer any questions about his communications with the President and White House advisors about the real reasons they added the citizenship question. The White House sent several letters, including on the day of the interview, vastly expanding its previous assertions of Executive Privilege to apply to Mr. Kobach—a private citizen who did not work for the Trump Administration when these communications took place.

The Trump Administration's expansion of Executive Privilege to apply to anyone the President talks to—including those completely outside the government—is a vast departure from previous precedent and obstructs the Committee's constitutional responsibility to conduct oversight of the Census.

Although Mr. Kobach followed the White House's orders for much of his interview, he did provide some new information. For example, he confirmed on the record certain elements of his conversations with the President and top White House aides. He also disclosed communications with the Trump campaign far earlier than previously known. However, he refused to answer questions about whether he had additional meetings with the President and his top aides other than those that have been previously disclosed. Finally, his description of his call with Secretary Ross appeared inconsistent with Secretary Ross' testimony before the Committee in March.

## I. THE OVERSIGHT COMMITTEE'S INTERVIEW WITH KRIS KOBACH

On April 29, 2019, the Committee sent a letter asking Mr. Kobach to participate in a voluntary transcribed interview regarding his communications with Trump Administration officials about adding the citizenship question.[1] Mr. Kobach agreed to participate.[2]

The Committee sought to interview Mr. Kobach in part to help determine the actual reasons behind the Trump Administration's decision to add the citizenship question. Commerce Secretary Wilbur Ross testified that he added the citizenship question "solely" at the request of the Department of Justice (DOJ) to help enforce the Voting Rights Act.[3]

However, documents obtained by the Committee reveal that this was not the case. Instead, the record shows that Secretary Ross began a secret campaign to orchestrate the addition of the citizenship question just days after assuming his post and several months before any request from DOJ. Secretary Ross conducted this campaign despite warnings from his own experts at the Census Bureau that a citizenship question would harm the accuracy of the Census.

The Committee has obtained documents showing that Secretary Ross discussed adding a citizenship question with Mr. Kobach several months before DOJ made its request.[4] In fact, Mr. Kobach has admitted publicly that he proposed this idea to President Trump "shortly after he was inaugurated" and that the President "absolutely was interested."[5] Documents and testimony also show that the discussions between Mr. Kobach and Secretary Ross were orchestrated by Steve Bannon, who served at the time as President Trump's Chief Strategist and Senior Counselor.[6]

---

[1] Letter from Chairman Elijah E. Cummings, Committee on Oversight and Reform, to Kris Kobach (Apr. 29, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2019-04-29.EEC%20to%20Kobach%20re%20TI.pdf).

[2] Email from Kaylan Phillips, Attorney for Kris Kobach, to Staff, Committee on Oversight and Reform (May 21, 2019) ("Mr. Kobach is willing to participate in a transcribed interview at a mutually convenient time.").

[3] House Committee on Appropriations, Subcommittee on Commerce, Justice, Science, and Related Agencies, *Hearing on FY19 Budget Hearing: Department of Commerce,* 115th Cong. (Mar. 20, 2018) (online at https://republicans-appropriations.house.gov/calendar/eventsingle.aspx?EventID=395131); *see also* Committee on Oversight and Reform, *Hearing with Commerce Secretary Wilbur L. Ross, Jr.*(Mar. 14, 2019) (online at https://oversight.house.gov/legislation/hearings/commerce-secretary-wilbur-l-ross-jr).

[4] *See, e.g.*, Email from Kris Kobach to Wendy Teramoto, Chief of Staff, Department of Commerce (July 21, 2017) (online at https://apps.npr.org/documents/document.html?id=4500011-1-18-Cv-02921-Administrative-Record#document/p776/a428457).

[5] *That Citizenship Question on the 2020 Census? Kobach Says He Pitched It to Trump*, Kansas City Star (Mar. 27, 2018) (online at www.kansascity.com/news/politics-government/article207007581.html).

[6] Email from Alexander Brooke, Department of Commerce, to Hilary Geary, Department of Commerce (Apr. 5, 2017) (stating that "Steve Bannon has asked that the Secretary talk to someone about the Census") (online at https://assets.documentcloud.org/documents/4616790/April-5-2017-Email-From-Brooke-Alexander.pdf); Committee on Oversight and Reform, *Hearing with Commerce Secretary Wilbur L. Ross, Jr.*(Mar. 14, 2019) (Secretary Ross testified that Mr. Bannon "requested" that Secretary Ross "consider taking a phone call from an individual called Kris Kobach" and that Mr. Bannon "said that Kobach had a question that he thought should be asked on the census") (online at https://oversight.house.gov/legislation/hearings/commerce-secretary-wilbur-l-ross-jr).

For example, Mr. Kobach wrote to Secretary Ross on July 14, 2017, asserting that the lack of a citizenship question "leads to the problem that aliens who do not actually 'reside' in the United States are still counted for congressional apportionment purposes."[7]

This rationale had nothing to do with enforcing the Voting Rights Act—the rationale offered publicly by Secretary Ross. However, Mr. Kobach's focus on excluding certain immigrants when apportioning legislative districts was similar to the rationale set forth in a newly-discovered study by a Republican gerrymandering expert, Thomas Hofeller, the year before the Presidential election. One of the principle conclusions of this study is that excluding certain immigrants in legislative districts—rather than counting all persons—"would be advantageous to Republicans and non-Hispanic whites."[8]

Although Mr. Hofeller acknowledged that such an approach would be a "leap," he noted that the process could not work unless Republicans started collecting citizenship data through the 2020 Census. He wrote: "Without a question on citizenship being included on the 2020 Decennial Census questionnaire, the use of citizen voting age population is functionally unworkable."[9]

Although Mr. Kobach reported that he had never met Mr. Hofeller, Mr. Hofeller reportedly had direct communications with the Trump Transition Team about adding the citizenship question, and they discussed using the rationale of assisting with the enforcement of the Voting Rights Act instead of the actual purpose identified in Mr. Hofeller's study—to help "Republicans and non-Hispanic whites." For example, Mr. Hofeller communicated directly with Mark Neuman, the Trump Transition Team official responsible for census issues. Mr. Neuman reportedly had a relationship with Mr. Hofeller going back decades, and he also communicated directly with Secretary Ross about this approach.[10]

## II. WHITE HOUSE INTERFERENCE WITH KOBACH INTERVIEW

On May 21, 2019, after Mr. Kobach agreed to participate in a voluntary interview, the White House sent a letter informing the Committee that it was instructing Mr. Kobach "not to discuss the substance of any conversations he had with the President or senior White House advisers about official government matters, including 'the addition of a citizenship question to the 2020 Census.'"[11]

---

[7] Email from Kris Kobach to Secretary Wilbur L. Ross, Jr., Department of Commerce (July 14, 2017) (online at https://apps.npr.org/documents/document.html?id=4500011-1-18-Cv-02921-Administrative-Record#document/p776/a428457).

[8] Thomas Hofeller, *The Use of Citizen Voting Age Population in Redistricting* (2015) (online at https://assets.documentcloud.org/documents/6111284/May-31-2019-Unredacted-Exhibits.pdf).

[9] *Id.*

[10] *Deceased G.O.P. Strategist's Hard Drives Reveal New Details on the Census Citizenship Question*, New York Times (May 30, 2019) (online at www.nytimes.com/2019/05/30/us/census-citizenship-question-hofeller.html).

[11] Letter from Michael M. Purpura, Deputy Counsel to the President, The White House, to Chairman Elijah E. Cummings, Committee on Oversight and Reform (May 21, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/MMPLetter05.21.2019.pdf).

The White House cited no valid legal authority or constitutional privilege for instructing Mr. Kobach not to answer the Committee's questions, but instead offered only a vague claim that these conversations were "confidential."[12] This is not a sufficient legal basis to dictate to a private individual that he may not answer questions from Congress.

On May 30, 2019, the Committee sent a response letter to the White House strongly objecting to the White House's interference in the Committee's investigation and, in particular, Mr. Kobach's interview. The Committee's letter stated:

> This dangerous new tactic by the White House significantly escalates its already alarming efforts to prevent witnesses—now including private citizens who are not employed by the White House or within the Trump Administration—from answering questions posed by Congress. This is the latest step in the Administration's unprecedented cover-up spanning multiple Executive Branch agencies and offices.[13]

The letter also stated:

> Such a sweeping and baseless extension of the Executive Privilege doctrine not only frustrates the Committee's investigation but, taken to its logical end, would allow the White House to conceal its communications with lobbyists, special interest groups, and campaign donors. Such extreme secrecy is inconsistent with the carefully limited bounds of Executive Privilege recognized by the federal courts.[14]

The letter concluded:

> For all of these reasons, the White House's instruction to Mr. Kobach is neither valid nor legally binding in any way, and we expect Mr. Kobach to answer all of the Committee's questions fully and truthfully during his upcoming interview. The Committee urges the White House to stop interfering inappropriately in this investigation.[15]

On June 3, 2019, the morning of the interview, the White House sent another letter to the Committee arguing that "our direction to Mr. Kobach stands." The letter claimed that "Mr. Kobach's communications with the President or senior White House advisers fall squarely within the scope of executive privilege." The letter cited two court opinions in support of its claim, but neither case addressed the President's communications with individuals outside the government.

---

[12] *Id.*

[13] Letter from Chairman Elijah E. Cummings, Committee on Oversight and Reform, to Pat Cipollone, Counsel to the President, The White House (May 30, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2019-05-30.EEC to Cipollone-WH re Kobach.pdf).

[14] *Id.* (citing *In re Sealed Case*, 121 F.3d 729 (D.C. Cir. 1997) (holding that "the presidential communications privilege should be construed as narrowly as is consistent with ensuring that the confidentiality of the President's decisionmaking process is adequately protected")).

[15] *Id.*

The letter cited no authority for the White House to enforce its instruction directly or to take legal action against Mr. Kobach for answering the Committee's questions.[16]

Unfortunately, the White House's demands had their intended effect. During the interview, Mr. Kobach declined more than 15 times to answer questions about his communications with the President and other White House officials, citing the directives from the White House.

These instructions represent an aggressive new tactic by the White House to stop private citizens from answering questions posed by Congress. Taken to their logical end, these tactics could allow the White House to hide communications with lobbyists, special interest groups, and campaign donors.

## III. NEW INFORMATION PROVIDED BY KOBACH

Although Mr. Kobach followed the instruction of the White House for much of his interview with Committee staff, he did describe some elements of his conversations with the President and his top aides, and his description of his call with Secretary Ross appeared inconsistent with Secretary Ross' testimony before the Committee in March.

### A. Kobach Confirms Direct and Early Involvement of President and Top Aides

During his transcribed interview with Committee staff, Mr. Kobach confirmed on the record that he met personally with key White House officials just days after the President's inauguration to discuss adding the citizenship question—including Chief of Staff Reince Priebus, Senior Adviser Steve Bannon, and even President Trump himself.

According to the interview transcript, Mr. Kobach acknowledged, "I did meet with the President and this issue was a subject during a meeting with the President." He also explained that he "met with Steve Bannon, senior adviser to the President, as well." He added, "The only other person that I can recall in those communications was Reince Priebus, Chief of Staff to the President." According to Mr. Kobach, the meetings took place in "late January-early February of 2017."[17]

Mr. Kobach also disclosed that he discussed adding a citizenship question far earlier than previously known—during the presidential campaign more than a year before any request from the Department of Justice. Describing himself as an "informal adviser to the President throughout the campaign," Mr. Kobach stated, "I certainly discussed the issue with people during the campaign."[18]

---

[16] Letter from Pat Cipollone, Counsel to the President, The White House, to Chairman Elijah E. Cummings, Committee on Oversight and Reform (June 3, 2019) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/PACLetter06.03.2019.pdf).

[17] Committee on Oversight and Reform, Interview of Kris Kobach (June 3, 2019).

[18] *Id.*

When Mr. Kobach was asked whether he had additional meetings with the President or his aides other than those that have been publicly disclosed, his attorney stepped in to block him from answering, citing the direction from the White House and claiming that it was "privileged information." He was asked again: "the question, just to be very clear, is whether there were other meetings later, not the substance of those meetings, but whether there were other meetings after that first set of meetings." In response, his attorney stated:

> [H]e may have had other meetings, but he's not going to reveal whether or not they involved the Census question. That's privileged. The White House has asserted a complete privilege over those issues.[19]

### B. Kobach Appears Inconsistent With Secretary Ross' Testimony

Documents previously obtained by the Committee show that after Mr. Kobach's meetings with President Trump and his aides at the White House, Mr. Kobach personally spoke to Secretary Ross "at the direction of Steve Bannon" and urged him to add the citizenship question.[20] Mr. Kobach also sent an email to Secretary Ross on July 14, 2017, proposing a draft citizenship question and explaining the rationale. He wrote that the lack of a citizenship question "leads to the problem that aliens who do not actually 'reside' in the United States are still counted for congressional apportionment purposes."[21]

On March 14, 2019, Commerce Secretary Wilbur Ross testified at a hearing before the Committee. During that hearing, Secretary Ross admitted that he spoke directly with Mr. Kobach about adding the citizenship question. However, Secretary Ross downplayed the significance of his conversation with Mr. Kobach, asserting, "I rejected the question that Kris Kobach wanted asked."[22]

Similarly, on December 21, 2018, Secretary Ross sent a letter to then-Ranking Member Elijah E. Cummings asserting that he had completely rejected not only Mr. Kobach's proposed question, but also the reasons behind it. He wrote that his only decision "in response to Mr. Kobach's ideas was my complete rejection of his proposed citizenship question configuration and the purposes motivating his proposed configuration."[23]

---

[19] *Id.*

[20] Email from Kris Kobach to Wendy Teramoto, Chief of Staff, Department of Commerce (July 21, 2017) (online at https://apps.npr.org/documents/document.html?id=4500011-1-18-Cv-02921-Administrative-Record#document/p775/a428456).

[21] Email from Kris Kobach to Secretary Wilbur L. Ross, Jr., Department of Commerce (July 14, 2017) (online at https://apps.npr.org/documents/document.html?id=4500011-1-18-Cv-02921-Administrative-Record#document/p776/a428457).

[22] Committee on Oversight and Reform, *Hearing with Commerce Secretary Wilbur L. Ross, Jr.*, 116th Cong. (Mar. 14, 2019) (online at https://oversight.house.gov/legislation/hearings/commerce-secretary-wilbur-l-ross-jr).

[23] Letter from Secretary Wilbur L. Ross, Jr., Department of Commerce, to Ranking Member Elijah E. Cummings, Committee on Oversight and Government Reform (Dec. 21, 2018) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/DOC.122118.%20Response%20to%20EEC%20re%20Citizenship%20Questions.pdf).

However, when Mr. Kobach was asked during his transcribed interview with Committee staff about Secretary Ross' reaction to his proposal and his rationale regarding the addition of the citizenship question, he denied that Secretary Ross rejected them. He told Committee staff:

> If he had said flatly no, I don't, whatever, you know, I think that's a bad idea, I probably would have remembered that. So I think his—I don't remember his specific response, but I'm pretty sure it wasn't, you know, absolutely no.[24]

Although the citizenship question that Secretary Ross added to the 2020 Census differed slightly from the text proposed by Mr. Kobach, the record contains no evidence to corroborate Secretary Ross' claim that he "rejected" Mr. Kobach's proposal to add a citizenship question or his avowed purpose of addressing the "problem that aliens who do not actually 'reside' in the United States are still counted for congressional apportionment purposes."[25]

---

[24] Committee on Oversight and Reform, Interview of Kris Kobach (June 3, 2019).

[25] Email from Kris Kobach to Secretary Wilbur L. Ross, Jr., Department of Commerce (July 14, 2017) (online at https://apps.npr.org/documents/document.html?id=4500011-1-18-Cv-02921-Administrative-Record#document/p775/a428456).

**APPENDIX**
**Excerpts from Transcribed Interview with Kris Kobach**

**Kobach Discussed Citizenship Question with President and Top Aides After Inauguration**

Q: Mr. Kobach, are you aware of members of the transition team or members of the White House taking any action about the citizenship question around the inauguration period?

A: Could you repeat that question, please?

Q: Sure. Are you aware of any members of the transition team or any members of the White House taking action around the citizenship question during the—around the inauguration?

A: Yes.

Q: What actions were those?

A: Setting up communication and meetings.

Q: Meetings with who?

A: As we just discussed, as I mentioned in the article in the Kansas City Star, I did meet with the President and this issue was a subject during a meeting with the President. And I also—I also met with Steve Bannon, senior adviser to the President, as well.

Q: Were there any actions that were taken after those meetings?

Witness Counsel: It wasn't clear what you said. We couldn't hear that.

Q: Were there any actions that you were aware of that took place after those meetings?

A: There may have been actions taken by others that I'm not aware of, but all I'm aware of is subsequent communications. So I had a phone call after those meetings. The only other person that I can recall in those communications was Reince Priebus, Chief of Staff to the President.

…

Q: So do you remember more specifically when those meetings occurred that you previously discussed?

A: If you're talking about post inauguration, it would have been late January-early February of 2017.

Q: Did you meet with the President and Steve Bannon on the same day, or were those separate days?

A: I believe it was the same day, but I'm not certain.

Q: Was it—do you think it was two meetings or three meetings, or do you have any more specific recollection?

A: I think it was two meetings, one with Steve Bannon and then—and perhaps—and then, again, the timing is unclear to me, but one with Steve Bannon and then a subsequent meeting—I think it was subsequent—with the President. Mr. Bannon may have been in the room, and Mr. Priebus may have also been in the room.

Q: Were there meetings about this issue after that set of meetings?

Witness Counsel: Okay. He's not going to answer a question about this issue, meaning Census question discussion. That's privileged information.

Q: Do you recall—I think the question, just to be very clear, is whether there were other meetings later, not the substance of those meetings, but whether there were other meetings after that first set of meetings.

Witness Counsel: Well, he may have had other meetings, but he's not going to reveal whether or not they involved the Census question. That's privileged. The White House has asserted a complete privilege over those issues.

Q: I understand. This is [Committee staff] again. Just to be clear, I think he told us that that meeting—he had two meetings about the citizenship question: one with Mr. Bannon, one with the President and possibly Mr. Bannon and with Reince Priebus. So the question is just whether there were others that took place after that. That's the question.

Witness Counsel: Right. But, look, this is privileged. Asking the question "did you have a meeting to discuss with the President the addition of the Census question" invades the privilege. He's not going to discuss meetings with the White House about the Census question.

Q: So, Mr. Kobach—

Witness Counsel: He asserted a privilege.

**Kobach Discussed Citizenship Question with Trump Campaign Officials**

Q: During the campaign, President Trump's—now President Trump's campaign, did you ever discuss adding a citizenship question or restoring a citizenship question to the Census with anyone?

A: With anyone, including the President?

Q: Yes.

Witness Counsel: Well, to clarify, the question was about the campaign.

Q: Yes.

A: I'm sure I discussed it with someone. I don't know whether I—well, I don't recall discussing it with the President during the campaign, but I certainly discussed the issue with people during the campaign.

**Kobach Appears Inconsistent With Secretary Ross' Testimony Before the Committee**

Q: Did Secretary Ross ever express an opinion about the sample question that you included in your July 14th email with a slight variation or any comments on any of the options in the question? And I'm happy to read the variation that you provided again, if that's helpful.

A: That's okay. I remember it.

Q: Okay.

A: No, I don't recall—the answer to your question is I do not recall what Secretary Ross said in response.

Q: Did he reject the question?

A: Well, I don't recall what he said. I could say this. If he had said flatly no, I don't, whatever, you know, I think that's a bad idea, I probably would have remembered that. So I think his—I don't remember his specific response, but I'm pretty sure it wasn't, you know, absolutely no.

**Kobach Refused to Answer Whether He Discussed with White House Officials the Impact of a Citizenship Question on Political Power**

Q: The question I had was, Mr. Kobach, whether you ever had any discussions with anybody in the Trump administration regarding whether the citizenship question, adding a citizenship question to the Census, would impact the political power of Democrats or Republicans?

Witness Counsel: Okay. The extent that the answer does not require the invasion of the privilege, the witness can answer.

A: So I think you need to divide the question up, Department of Commerce, where I guess the White House is not asserting its privilege, and then White House, where the White House is asserting its privilege, because basically it's a compound question unless you divide it—

Q: It's just a simple yes or no that I'd like on that and then I'm happy to ask further follow-ups after that. This is just a general question about whether you've had any conversations with anybody in the administration?

Witness Counsel: We're done after this.

A: What I'm saying is by definition, if you're encompassing White House, then I am, by answering your question yes or no, describing the substance of communications with the White House.

Q: So I'm sorry. Are you saying you did have a conversation with the White House on this topic and you can't talk about it?

A: I'm asking you to—and I'll defer to my counsel—but I'm asking you to divide your question because I can't—the White House has said I can talk about the substance of my communications with the Department of Commerce but not with the White House.

Witness Counsel: Right. If you want to rephrase your question to nonprivileged areas, he will answer you.

Q: Okay. Excluding the President and the President's senior White House advisers, have you ever had a discussion with anybody in the Trump administration about whether adding a Census citizenship question would impact the political power of Democrats or Republicans or any other political parties?

A: I do not think I have had such a discussion. I don't recall having such a discussion.

Q: And excluding your conversation with—

Witness Counsel: Sorry. That's the last one.